## Staunton.

# W. D. Lucas, Administrator of Sue Lucas, Deceased, v. Pittsburgh Life and Trust Company, and Metropolitan Life Insurance Company.

### September 20, 1923.

1. Life Insurance—*Proof of Death—Waiver of Proof.*—A life insurance company in a letter, in reply to a letter of a beneficiary informing the company of the death of the assured, said nothing of requiring proof of such death, but took the position that it was not liable upon another ground, wholly independent of such proof.

   *Held:* That the company by such course waived all objection to the insufficiency of the proof of death.

2. Insurance—*Assumption of Insurance Contracts with an Insolvent Company by Another Company—Assent of Assured—Appeal and Error—Matters not Appearing from the Record—Case at Bar.*—In the instant case, an action on a life insurance policy against defendant insurance company, it appeared on the face of a contract between defendant company and an insolvent insurance company that defendant company did not by that contract assume the obligation of the policy of insurance sued on, but only agreed to do so in the event that the assured became privy to such contract by himself assenting thereto and agreeing and contracting with defendant company as stipulated in the contract. This, so far as appeared from the record, the assured never did.

   *Held:* That so far as the record disclosed, defendant company had never as umed the obligation of the policy of insurance.

3. Insurance—*Assumption of Insurance Contracts of an Insolvent Company by Another Company—Withdrawal of Securities Under Section 4211 of the Code of 1919—Appeal and Error—Matters not Appearing from the Record.*—In an action against defendant insurance company upon a policy of insurance, the obligation of which complainant alleged defendant company had assumed under a contract with the company issuing the policy, the petition, on appeal, claimed that the company issuing the policy made deposit with the treasurer of Virginia of securities under section 4211 of the Code of 1919, on which the plaintiff, along with other Virginia policy holders, had a lien

under section 4214 of the Code of 1919, and that the defendant company had withdrawn all of such securities from the hands of the treasurer under the provisions of section 4217 of the Code of 1919.

*Held:* That as this did not appear from the allegations of the bill or otherwise from the record before it, the Supreme Court of Appeals could not adjudicate upon the effect that such facts might have upon the case.

4. INSURANCE—*Assumption of Insurance Contracts of One Company by Another Company—Withdrawal of Securities Under Section 4211 of the Code of 1919.*—Unless the circumstances are so exceptional as to take the case out of the general rule applicable in such cases, the securities deposited with the treasurer of Virginia by an insurance company under section 4211 of the Code of 1919 cannot be legally withdrawn by another company taking over the business of the depositing company under the provisions of section 4217 of the Code of 1919 unless it is made to appear that the obligations of the depositing company's policies have been in fact assumed by the company withdrawing the deposit, and not merely agreed to be assumed upon certain conditions not contained in the policies. Actual assumption of the policy obligation is the burden that section 4217 of the Code requires to be taken upon itself by the corporation withdrawing such deposit; and, notwithstanding that a contract between insurance companies does not contain appropriate language to evidence such an assumption, the actual assumption will, in general, be presumed, where such a deposit has been withdrawn under such statute.

5. INSURANCE—*Assumption of Insurance Contracts of One Company by Another Company—Securities Deposited Under Section 4211 of the Code of 1919.*—Where a deposit has been made with the treasurer of Virginia under section 4211 of the Code of 1919 by an insurance company and has not been withdrawn, a Virginia policyholder, notwithstanding the failure to prove the actual assumption of the obligation of his policy by another insurance company taking over the business of the depositing company, has a lien on the deposit under section 4214 of the Code of 1919, along with other Virginia policyholders affected, and is entitled to enforce the same by suit in the circuit court of the city of Richmond.

6. INSURANCE COMPANY—*Insolvency—Dissolution—Effect on Policies.*— The insolvency and dissolution of an insurance company *ipso facto* cancels its outstanding policies.

7. INSURANCE COMPANY—*Insolvency—Dissolution—Effect on Policies.*— A life insurance company when adjudged insolvent and dissolved, has broken its engagement with its policyholders and becomes liable to them in damages for such breach. The measure of damages is the net value of the policies, without regard to the health of the holder, calculated as of the date of the dissolution of the company,

according to the tables of mortality used in the business of life insurance, less outstanding premium notes, if any.

8. INSURANCE COMPANY—*Insolvency—Dissolution—Effect on Policies—Case at Bar.*—In the instant case, an action on a life insurance policy, it appeared that before the death of the insured the life insurance company had become insolvent and by a contract between the receiver of the company and another life insurance company the latter company was to assume the obligations of policies issued by the insolvent company upon the consent of the assured. It was contended that this contract prevented the company issuing the policies from being wound up as insolvent, thereby canceling its policies.

*Held:* That an examination of the contract disclosed that the contract did not prevent the issuing company from being wound up as insolvent, *quoad* policyholders by whom the agreement of the second company to assume the obligation of their policies had not been accepted.

Appeal from a decree of the Circuit Court of Giles county. Decree for defendants. Complainant appeals.

*Decree under review modified and affirmed.*

This suit in equity was instituted in the Circuit Court of Giles county by Sue Lucas, the beneficiary named in an annual payment policy of life insurance taken out by her son, Wiley S. Lucas, dated November 26, 1915, in the Pittsburgh Life and Trust Company, a Philadelphia corporation, authorized to do business in Virginia, one of appellees, for $2,000.00 which was afterwards (on January 24, 1917), by mutual consent of the assured and insurer, reduced to $1,000.00 as of November 26, 1916, and the premium therefor owing as of that date was paid on January 24, 1917.

The record shows that the Pittsburgh Life and Trust Company was, by a Pennsylvania court having jurisdiction so to do, decreed to be insolvent, and placed in the hands of a receiver on May 17, 1917, and that on the 26th day of July, 1917, a decree of dissolution was entered by the same court dissolving such corporation

as of May 1, 1917—all of which was prior to the death of the assured.

The receiver appointed by the Pennsylvania court entered into a contract in writing with the Metropolitan Life Insurance Company, which was approved by the Pennsylvania court, of date August 3, 1917, the material provisions of which, as involved in the instant cause, are as follows:

"Whereas, it is the desire of the parties hereto to effect an arrangement whereby holders of policy and annuity contracts of the Pittsburgh Company may, with the assent of such holders of contracts, have their contracts assumed by the Metropolitan Company subject to terms and conditions believed to be fair and equitable to all parties concerned   *   *   *.

"It is agreed:

"First: The Metropolitan Company *agrees to assume, with* consent of the several owners and holders thereof, the policies of all companies reinsured by it, in force by their terms on the 7th day of May, 1917, and, *except as herein provided*, to carry out all the provisions and agreements contained in said policies, *subject to an agreement on the part of each holder and owner so consenting* that the Metropolitan Company may establish and place against his or her policy a lien equal to thirty-three and one-third (33 1-3 per cent.) per centum of the legal reserve thereon as it had been established and was carried on the books of the Pittsburgh Company on May 7, 1917, such lien to bear interest at the rate of five (5 per cent.) per centum, both lien and the interest thereon to be deducted from any payment made by the Metropolitan Company pursuant to the terms of said policies or from any settlement made thereunder, or *from the value used to purchase any paid-up or continued insurance,* except *that should the insured die within five (5) years from the*

*date of said assumption*, the Metropolitan Company will, if the policy be then in force, waive the aforesaid lien, subject, however, to the deduction of any accrued and unpaid interest on the amount of such lien.

\* \* \* \* \* \* \* \* \* \*

"The receiver agrees to recommend to said holders of policy and annuity contracts that they consent to the assumption of their contracts by the Metropolitan Company as set forth in this agreement, and the receiver agrees furthermore to facilitate in every way possible the transfer of the policy and annuity contract of the Pittsburgh Company to the Metropolitan Company as set forth herein. The parties hereto agree to use all possible diligence to obtain the consent of every holder of a policy or annuity contract to the assumption of his or her policy or annuity contract by the Metropolitan Company *to the end that the business may be protected so far as possible from lapsation and corresponding loss of protection.*

"Second:

"Upon the execution of these presents and the approval thereof by the appropriate court or courts, and upon presentation by the receiver to the Metropolitan Company of the data required by paragraph fourth hereof respecting all policies of life insurance and all annuity or supplementary contracts upon which said Pittsburgh Company was the insurer on May 7, 1917, the said receiver will forthwith cause to be assigned, transferred, set over or conveyed to the Metropolitan Company assets, at the valuation fixed pursuant to paragraph fifth hereof, to an amount equal to seventy-two and one-half (72 ½ per cent.) per centum of the reserves upon such policies, annuity or supplementary contracts on the basis provided in paragraph first hereof, with interest thereon at the rate of five (5 per cent.) per

centum per annum from the said 7th. day of May, 1917. *The Metropolitan Company shall immediately thereafter proceed to secure the necessary individual assents to its assumption of said contracts* and *where policyholders* or holders of annuity or supplementary contracts *shall establish claims against the receiver under their contracts instead of accepting such assumption by the Metropolitan Company, it will pay to the receiver, upon demand, a sum equal to the amount that shall have been paid by said receiver to the Metropolitan Company on account of policyholders* or holders of annuity or supplementary contracts *so establishing their claims,* with interest on said last mentioned payment at the same rate of such transfer to it. *Upon such repayment the Metropolitan Company shall be relieved of any and all liability with respect to such policies or contracts as to which proof of claim shall have been made and established as aforesaid.*

"It is further agreed that in each case where a *policy* or annuity contract *is assumed and taken over by the Metropolitan Company with the consent and agreement of the holders thereof* and assets are transferred to the Metropolitan Company on account thereof in accordance with this agreement, *the Pittsburgh Company shall be released from its obligation to the policy* or annuity *holder and the receiver thereof is to be protected by the Metropolitan Company from any claim or expense by virtue of the policy* or annuity *contract in question and the continuation thereof.*

"Third: This agreement shall apply, *except as herein otherwise specified,* to all unmatured policy contracts, including annuities, which were in force and unmatured May 7, 1917, and shall also apply to policies not in force on said date, but subsequently reinstated. As to policies in force May 7, 1917, but upon which premiums subsequently falling due have not been paid, such policy

contracts shall be entitled hereunder, *upon consent to assumption to the non-forfeiture privileges contained therein* subject to the deduction of the amount of the lien thereon *in accordance with the terms of this agreement.* It is further understood that as to all contracts assumed and taken over by the Metropolitan Company the receiver will forthwith pay to the Metropolitan Company in cash, in addition to seventy-two and one-half (72½ per cent.) per centum of the reserve as provided in paragraph second hereof, all premiums theretofore or hereafter collected or received by him as receiver, it being intended that this agreement shall cover as and from the said seventh day of May, 1917, all policy and annuity contracts of the Pittsburgh Company then in force and unmatured, *where the holders and owners are willing to and shall consent to the assumption of their contracts by the Metropolitan Company under the terms herein proposed.*

"Fourth: The parties agree to execute and deliver any and all papers and instruments and to do all necessary acts to carry out the intent of this agreement. It is understood furthermore that all books, papers, letters, records, cards, files and fixtures of the Pittsburgh Company, relating to its policy and annuity contracts, will be turned over to it by the receiver, including especially notes, agreements and any other matter affecting such contracts. *It is understood that data relating to contracts of policyholders or annuitants not consenting to assumption by the Metropolitan Company will be returned to the receiver on demand.*

\*    \*    \*    \*    . \*    \*    \*    \*    \*    \*

"Eighth: *The consent of any policyholder* or holder of an annuity contract *shall be conclusive evidence of the acceptance by him of all the terms and conditions of this agreement* so far as the same shall pertain to any rights *or obligations* with respect to him.

"Ninth: The receiver hereby assigns and transfers to the Metropolitan Company all of the rights, title and interest of the Pittsburgh Company in and to any and all deposits made with the appropriate officials of any State or Territory pursuant to law, including any and all deposits so made by the Washington Life Insurance Company, or any other company whose policy obligations may have been reinsured or taken over by the Pittsburgh Company and which deposits were on May 7, 1917, the property of the Pittsburgh Company." * * * (Italics supplied.)

So far as appears from the record, no further premium was paid on the aforesaid policy after the aforesaid second premium which paid it up to November 26, 1917. However, there are certain non-forfeiture provisions in the policy to the effect that it should not lapse, and that, on the expiration of thirty-one days from November 26, 1917, it should be converted into "extended insurance" for the limited period of three years "without participation in profits and without the right to loans." It is not clear whether this provision meant to extend the policy three years from the date of the policy or from the date of default in paying the premium due November 26, 1917; but that is immaterial, as the assured, Wiley S. Lucas, was killed in action on September 29, 1918, at Argonne Forest, in France, as claimed by appellant, which was within three years of the date of the policy.

The bill alleges that the complainant, Sue Lucas, was officially notified of the death of her son, the said insured, by the War Department of the United States, and that she "immediately notified the said Metropolitan Life Insurance Company" of such death, and that such company replied to such notice by the following letter:

"Metropolitan Life Insurance Co.,
"John R. Kegeman, President.
"New York City, November 11, 1918.
"Claim Division,
"Edw. O. Wieters, Manager;
"H. P. Peters, Asst. Manager.
"In re: P. C. 168850—Wiley S. Lucas.
"Mrs. Sue Lucas,
"c-o First Nat'l Bank,
"Pearisburg, Va.
"Dear Madam:
"Your favor of the 4th inst., advising us of the death of the insured under this policy, was duly received.

"On consulting our records, we find that there is no evidence that Mr. Lucas ever consented to the lien proposition of the Metropolitan as outlined in the circular letter which was sent to him in August, 1917, and we have, therefore, assumed no liability under this policy.

"Mr. Thomas B. Donaldson, located in Room 9025, No. 1 Madison Avenue, N. Y. C., is in charge of the liquidation of the Pittsburgh Life and Trust Company, and any further inquiries in regard to this case must be addressed to him.
"Yours truly,
"Edw. O. Wieters, Manager."

The bill bases the right of recovery of the plaintiff upon the allegation that by the terms of said contract in writing the Metropolitan Life Insurance Company did not merely agree to assume, provided the assured assented thereto, but independently of such condition, did in fact assume the obligation of said policy; and alleges that the Pittsburgh Life and Trust Company, by the terms of such contract, "assigned and turned over"

to the Metropolitan Life Insurance Company "a large amount of money, bonds, real estate and other properties, real and personal, among which was the said several premiums paid by the said Wiley S. Lucas, in consideration of which the said Metropolitan Life Insurance Company agreed and undertook to do and perform all of those things in the said policy mentioned and set out, which it was incumbent upon the said Pittsburgh Life and Trust Company to do and perform, and all of this will appear by the contract (aforesaid) * * *," which is asked to be treated as a part of this bill.

On the 27th of June, 1919, the cause came on to be heard upon the bill taken for confessed as to the Pittsburgh Life and Trust Company, whereupon it was ordered that the plaintiff recover of such company the sum of one thousand dollars, the amount of the policy sued on, with interest from September 29, 1918, until paid and the costs of suit; and on motion of the Metropolitan Life Insurance Company the cause was continued as it is.

On October 31, 1919, the last named company, by leave of court, filed its demurrer and answer to the plaintiff's bill.

The demurrer took the position, in substance, that the contract, filed with the bill and made a part thereof, showed on its face that the Metropolitan Life Insurance Company did not in fact assume the obligation of the policy, but merely agreed that it would so do, upon the condition that the assured, Wiley S. Lucas, himself, first consented, agreed and contracted with this defendant as in said contract set forth, so as to create a liability on such defendant; that such contract, etc., did not appear from the allegations of the bill; and that the liability of such defendant could not be predicated on

any consent or acceptance of the terms of said contract by the beneficiary after the death of the assured.

The answer of this defendant took the same position, and denied that the assured ever assented to said contract or agreed to the provisions thereof or any of them, in his lifetime; and the additional position is taken that such defendant did not admit the death of the assured as alleged in the bill but called for strict proof thereof. The answer, however, admits the writing of the aforesaid letter, alleged in the bill as received by the complainant in reply to her letter notifying such defendant of the death of the assured, and that it declined to pay the policy for the reasons stated in such letter.

The answer does not admit the receipt by the defendant of any assets of the Pittsburgh Life and Trust Company.

At the same time that said demurrer and answer were filed, to-wit, October 31, 1919, the Pittsburgh Life and Trust Company and Thomas B. Donaldson, Insurance Commissioner of the State of Pennsylvania and as such the then receiver of the Pittsburgh Life and Trust Company, by leave of court filed their separate petitions to set aside the aforesaid judgment against the last named company.

These petitions filed copies of the proceedings in the aforesaid Pennsylvania court; they do not show the receipt by the Metropolitan Life Insurance Company of any assets of the Pittsburgh Life and Trust Company; they, indeed, do not make any allusion to the aforesaid contract between the Metropolitan Life Insurance Company and the receiver of the Pittsburgh Life and Trust Company, or to what was done thereunder; but set up the aforesaid decree of dissolution of the latter company entered by the aforesaid Pennsylvania court, and take the following positions:

First: That no decree at all could have been lawfully rendered by the court below against the Pittsburgh Life and Trust Company; that this corporation having failed and gone into the hands of a receiver, the plaintiff's remedy was to file a claim with said receiver under the laws of the State of Pennsylvania, prove the value of the policy at the time the corporation went into the hands of the receiver, and have that value allowed and paid in accordance with the laws of Pennsylvania and out of the assets of this corporation in the hands of the receiver.

Secondly: That in no case could a proper decree have been rendered against this corporation for the face of the policy; that the extent of the liability of the Pittsburgh Life and Trust Company by reason of said policy became fixed as of the date of the aforesaid dissolution of such company, to-wit, on May 1, 1917, and allege that the only amount which was payable out of the assets of this company was the value of said policy at the time this corporation went into the hands of said receiver, which was something like the sum of $27.00, which the receiver alleges in his petition he "had offered to pay."

These petitioners also demurred to the plaintiff's bill, as appears from the record, but such demurrers are not copied in the printed record, so that it does not appear from the record before the court on appeal what were the grounds of such demurrers.

Subsequently, the death of Sue Lucas, the original plaintiff, being suggested, the cause was revived in the name of appellant, her administrator, who was also substituted as party defendant to the said petitions.

No depositions were taken and no other evidence than that above referred to was introduced by any of the parties.

Thereafter, on June 30, 1921, the decree under review was entered, which is as follows:

"Decree.

"This cause came on this day to be heard upon the plaintiff's bill and exhibits therewith, the demurrer and answer of the Metropolitan Life Insurance Company thereto, upon plaintiff's joinder in said demurrer and general replication to said answer, upon the petitions of the Pittsburgh Life and Trust Company and Thomas B. Donaldson, Insurance Commissioner of the State of Pennsylvania, and as such, receiver of the Pittsburgh Life and Trust Company, and the demurrer of the plaintiff to said petition and petitioners' joinder in said demurrer, upon the separate demurrer and answer of the Pittsburgh Life and Trust Company and Thomas B. Donaldson, receiver, and plaintiff's joinder in said demurrer and general replication to said answer, upon all papers formerly read and all decrees and orders heretofore entered and was argued by counsel, on consideration whereof, it is adjudged, ordered and decreed that the plaintiff's demurrer to said petition be overruled, and that the plaintiff is not entitled to any relief against the Metropolitan Life Insurance Company, and the plaintiff's bill against said Metropolitan Life Insurance Company be and is hereby dismissed, and that the said Metropolitan Life Insurance Company do recover of W. D. Lucas, administrator of Sue Lucas, its costs in this behalf expended, to be levied of the goods and chattels of his intestate in his hands to be administered, and the court is of the opinion that the amount of the liability of the Pittsburgh Life and Trust Company is fixed by the date of its insolvency and not increased by the subsequent death of the assured, and that liability is the value of such policy at the date of such insolvency, and as the receiver of the Pittsburgh Life and Trust Com-

pany in his answer has indicated a willingness to settle with plaintiff on that basis, and the court entertaining a doubt as to its jurisdiction to enter any judgment against the Pittsburgh Life and Trust Company or its receiver, no decree is now rendered and the court reserves its judgment on this point for future adjudication in the event that said receiver does not voluntarily pay or tender to the plaintiff the amount due on the principles above announced, all of which is adjudged, ordered and decreed, and it is further adjudged, ordered and decreed that the decree of this court in this cause rendered on the 27th day of June, 1919, by which a decree was rendered in favor of the plaintiff against the Pittsburgh Life and Trust Company for the sum of $1,000.00 with interest thereon from the 29th day of September, 1919, and costs, is erroneous and said decree is hereby annulled, and set aside. And this cause is continued.''

*W. B. Snidow*, for the appellant.

*Jackson & Henson*, for the appellees.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignment of error will be disposed of in their order as stated below.

1. Is the decree under review erroneous in its holding that the plaintiff is not entitled upon the facts appearing in the record before us to any relief in this suit against the Metropolitan Life Insurance Company?

The question must be answered in the negative.

The Metropolitan Life Insurance Company defended upon two grounds only,—

1st. That proof of the alleged death of the assured has not been furnished.

2nd. That the contract alleged in the bill shows on its face that it does not embody any actual assumption by this defendant of the obligation of the policy of insurance sued on.

[1] We are of opinion that the 1st ground is not well taken. In view of the letter of this defendant, in reply to the letter of the beneficiary informing such defendant of the death of the assured, in which reply nothing was said requiring proof of such death, but the position was taken that this defendant was not liable upon another ground, wholly independent of such proof, we think that such defendant waived all objection to the insufficiency of the proof of the death. *West Rockingham, etc., Ins. Co.* v. *Sheets & Co.*, 26 Gratt. (67 Va.) 854. See also *Snyder* v. *Supreme, etc., Circle*, 122 Tenn. 248, 122 S. W. 981, 45 L. R. A. (N. S.) 209, upon the principle involved, where, as in the instant case, the record is silent as to the elements which, if present, would apply the waiver on the ground of estoppel, because of the misleading of the plaintiff to her prejudice.

[2] We are, however, of opinion that, upon the facts so far as they appear in the record before us, the 2nd ground is well taken. We think that it appears on the face of the contract of the Metropolitan Life Insurance Company with the Pittsburgh Life and Trust Company, set up in the bill, that the former company did not thereby assume the obligation of the policy of insurance sued on, but only agreed to do so in the event that the assured became privy to such contract by himself assenting thereto and agreeing and contracting with such corporation as stipulated in such contract. This, so far as appears from the record before us, the assured never did. Therefore, so far as the record before us discloses,

the Metropolitan Life Insurance Company has never assumed the obligation of said policy of insurance.

[3, 4] The petition, indeed, claims that the Pittsburgh Life and Trust Company made deposit with the Treasurer of Virginia of $50,000.00 of securities under section 4211 of the Code, on which the plaintiff, along with other Virginia policyholders, had a lien under section 4214 of the Code; and that the Metropolitan Life Insurance Company has withdrawn all of such securities from the hands of the State Treasurer under the provisions of section 4217 of the Code. This does not appear from the allegations of the bill or otherwise from the record before us, so that we cannot adjudicate upon the effect that such facts might have upon the case. We may say, however, that unless the circumstances were so exceptional as to take the case out of the general rule applicable in such case, the deposit mentioned could not have been legally withdrawn by the Metropolitan Life Insurance Company under the provisions of section 4217 of the Code unless it had been made to appear in that proceeding that the obligation of said policy had been in fact assumed by such company, and not merely agreed to be assumed upon certain conditions not contained in the policy. Actual assumption of the policy obligation is the burden that section 4217 of the Code requires to be taken upon itself by the corporation withdrawing such deposit; and, notwithstanding that the contract in evidence does not contain appropriate language to evidence such an assumption, the actual assumption will, in general, be presumed, when such a deposit has been withdrawn under such statute. *Am. Bonding Co.* v. *Am. Surety Co.*, 127 Va. 209, 221, 103 S. E. 599.

[5] On the other hand, if the deposit mentioned was made and has not been withdrawn, the plaintiff, not-

withstanding the failure to prove in this suit the actual assumption aforesaid, has a lien on the deposit under section 4214 of the Code, along with other Virginia policyholders affected, and is entitled to enforce the same by suit in the Circuit Court of the city of Richmond.

[6] 2. Did the decree under review err in setting aside the judgment against the Pittsburgh Life and Trust Company entered upon the bill taken for confessed as to it, when it was subsequently made to appear that such corporation, by decree of the Pennsylvania court having jurisdiction so to do, had been decreed to be insolvent and had been dissolved as of May 1, 1917, prior to the institution of this suit and prior to the death of the assured?

The question must be answered in the negative.

The insolvency and dissolution of an insurance company *"ipso facto* cancels its outstanding policies." *Johnson* v. *Button,* 120 Va. 339, 343, 91 S. E. 151; 22 Cyc. 1404; *Carr* v. *Hamilton,* 129 U. S. 252, 9 Sup. Ct. 295, 32 L. Ed. 671; *Com.* v. *American Life Ins. Co.,* 162 Pa. 586, 29 Atl. 660, 42 Am. St. Rep. 844; *People* v. *Security Life Ins. Co.,* 78 N. Y. 114, 34 Am. Rep. 522.

In 22 Cyc., *supra* (p. 1404), this is said: "The insolvency of an insurance company constitutes a breach of contract on its part, and on dissolution of the company claims of policyholders are debts due *in praesenti.*"

[7] In *Com.* v. *American Life Ins. Co., supra* (162 Pa. 586, 29 Atl. 660, 42 Am. St. Rep. 844), this is said: "A life insurance company when adjudged insolvent and dissolved, has broken its engagement with its policyholders and becomes liable to them in damages for such breach. The measure of damages is the net value of the policies, without regard to the health of the holder, calculated as of the date of the dissolution of the com-

pany, according to the tables of mortality used in the business of life insurance, less outstanding premium notes, if any."

The decree under review is in entire accord with our holding upon the question under consideration, and with the authorities we have above cited.

[8] It is urged in argument for the plaintiff that the aforesaid contract between the receiver and the Metropolitan Life Insurance Company prevented the Pittsburgh Life and Trust Company from being wound up as insolvent, so that, it is contended, the principles announced in the authorities just cited do not apply to the instant case. But an examination of the aforesaid contract, especially of the second paragraph thereof quoted in the statement preceding this opinion, discloses that the contract does not prevent the Pittsburgh Life and Trust Company from being wound up as insolvent, *quoad* policyholders by whom the agreement of the Metropolitan Life Insurance Company to assume the obligation has not been accepted as provided for in the contract. On the contrary, such winding up of the affairs of the former corporation *quoad* such policyholders is distinctly provided for. And, as we have above held, the plaintiff falls within this class of policyholders.

As appears from the decree under review, the court below has not decided whether it can properly enter any decree against the Pittsburgh Life and Trust Company, hence that question is not before us for adjudication.

For the reasons above stated the decree under review will be affirmed, with the modification, however, that the bill shall not stand dismissed and shall not be dismissed as against the Metropolitan Life Insurance Company prior to further hearing, if the plaintiff should desire to and shall, within a reasonable time, amend the bill by allegation to the effect that such corporation

withdrew the deposit with the State Treasurer above referred to upon the showing in that proceeding that the corporation had assumed the contingent liabilities mentioned in section 4217 of the Code, but if such amendment is not made within a reasonable time the court below shall order the bill to be dismissed as against such corporation; and we will further provide in our decree that, even if the plaintiff shall not elect to so amend the bill, nothing in the decree under review nor in the decree we shall enter shall be construed to bar the plaintiff from proceeding by suit in the Circuit Court for the city of Richmond to enforce any rights he may have, if any, under section 4214 of the Code, if such deposit or any portion thereof still remains in the hands of the State Treasurer.

*Decree under review modified and affirmed.*