In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York for an Order to Take Possession of the Property and Liquidate the Business and Affairs of THE LLOYDS INSURANCE COMPANY OF AMERICA.

(Claim of LYMAN A. SPALDING [SPALDING & McCABE], Claim No. 1-S & M-2115.)

(Claim of JAMES A. DOHERTY, Claim No. 1-S & M-1857.)

(Claim of THOMSON & McGINTY, Claim No. 1-S & M-317.)

LYMAN A. SPALDING, JAMES A. DOHERTY, and THOMSON & McGINTY, Appellants; LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Liquidator of LLOYDS INSURANCE COMPANY OF AMERICA and NORTHEASTERN SURETY COMPANY, Respondent. (Consolidated Appeals.)

First Department, October 30, 1936.

*Lyman A. Spalding* of counsel [*John H. Jackson* with him on the brief], for the appellant Spalding & McCabe.

*James A. Doherty,* for the appellants Thomson & McGinty and James A. Doherty.

*Irvin Waldman* of counsel [*Alfred C. Bennett,* attorney], for the respondent.

McAvoy, J. The claimants are all attorneys who seek to recover for legal services rendered during the year 1933 as trial counsel in defending actions against persons covered by policy contracts of insurance issued by the Northeastern Surety Company prior to February 5, 1930.

The claims all involve the distribution of the special statutory deposit of Northeastern Surety Company, of $250,000, made with the Superintendent of Insurance, as required by section 71 of the Insurance Law from any domestic insurer wishing to do two or more of the types of insurance authorized by section 70. Section 71 describes the purpose of this deposit as follows: " The securities deposited pursuant to this section shall be held by the Superintendent in trust for the benefit and protection of and as security for the policyholders of the corporation."

In 1930 the Northeastern Surety Company transferred its business to Lloyds Casualty Company, another New York insurance corporation. This transfer was made by means of a bilateral agreement dated January 31, 1930, which provided, in brief, that Northeastern should sell all its assets to Lloyds Casualty for $1,330,000 in cash and the assumption and reinsurance of Northeastern's liabilities and policies.

The paragraph of this agreement covering the sale of assets included the following express reference to the statutory deposit: " the seller [Northeastern] agrees to assign all of its right, title and interest in and to certain bonds of the approximate value of Two Hundred Fifty Thousand Dollars ($250,000) now on deposit for its account and all of its policyholders with the Superintendent of Insurance of the State of New York, said deposit having been made pursuant to the provisions of the Insurance Law of the State of New York; upon condition, however, that the Purchaser [Lloyds Casualty] will keep and maintain the said bonds and any equity which it may acquire therein separate and apart from any of its other assets, reserves or funds until all and any of the obligations to policyholders assumed by the Purchaser, as hereinafter set forth shall have been fully paid, adjusted, compounded or discharged."

The entire transfer of assets, generally, was furthermore made " subject to any and all liabilities of the Northeastern Surety Company as shown by its books and records, and any possible, future, contingent liability, presently known or unknown."

On February 4, 1930, Northeastern Surety Company executed a bill of sale to Lloyds Casualty of all its assets " subject to all liabilities * * * whether the same be fixed, contingent, present or future, liquidated or unliquidated, known or unknown," and Lloyds Casualty assumed all obligations and agreed to reinsure all outstanding policies and bonds without further payment of premium.

By an agreement of merger and consolidation, dated August 18, 1932, all the rights, franchises and interests of Lloyds Casualty were transferred to and vested in Lloyds Insurance Company of

America, another New York insurance corporation, which thereby succeeded to all the obligations and liabilities and became liable to pay and discharge all the debts of Lloyds Casualty.

On August 16, 1933, the order was made and entered for the liquidation of Lloyds Insurance. It required all persons having claims against Lloyds Insurance, Lloyds Casualty and Northeastern (among others) to present such claims to the Superintendent of Insurance as liquidator, or to his Special Deputy in charge of liquidation not later than February 16, 1934.

In the first preliminary report the liquidator set forth his recommendations and proposed procedure for the distribution of the Northeastern statutory deposit. The pertinent provisions of that report are as follows: "The liquidator received these securities subject to the trust which the fund was impressed with, namely, for the protection exclusively of policyholders of Northeastern Surety Company. In 1930 when the Lloyds Casualty Company purchased control of the Northeastern Surety Company, by purchasing its assets from the stockholders and by assuming liabilities by contract of reinsurance, the above-described statutory deposit was included in the assets sold. The deposit, however, was never turned over to Lloyds Casualty Company even though Lloyds Casualty Company had the required deposit for domestic companies with the Superintendent of Insurance at Albany, New York. In approving the reinsurance contract, the Superintendent of Insurance did so with the provision that the Northeastern Surety Company statutory deposit remain in the hands of the Superintendent of Insurance until all claims under policies of Northeastern Surety Company were disposed of. Liquidation of Lloyds Insurance Company of America took place before all of the claims of Northeastern Surety Company were settled and paid. * * * The liquidator has not reported on claims which will be recommended for allowance but does recommend that petition be made to the Supreme Court for an order authorizing and permitting the liquidator, at the appropriate time, to make a distribution of the trust fund for policyholders of the Northeastern Surety Company to the holders of approved claims arising in connection with policies or bonds of Northeastern Surety Company. If any surplus remains after payment of all such claims in full, but without interest, it is recommended that such surplus be turned into the general account of the liquidator to be added to the general funds for distribution to general creditors. A further report setting forth all claims recommended for allowance and containing definite recommendations as to the distribution of the Northeastern Surety Company policyholder account, will be made by the liquidator at such time as all of the Northeastern Surety Company claims have been finally determined."

By order of October 29, 1934, the Supreme Court appointed Bertram F. Willcox, Esq., referee, to hear and take evidence and report thereon (among other things) " objections * * * to the recommendations of the liquidator as to the distribution of the special trust account for the benefit of insurance claimants of Northeastern Surety Company."

Claimants objected to the granting of an order directing the liquidator to turn over the surplus of the Northeastern statutory deposit after payment of policyholders, to the general account of the liquidator to be added to the general fund for distribution to general creditors of the Lloyds Insurance Company of America, and requested that " the order to be entered upon the present motion shall direct that no moneys are to be paid from the aforesaid statutory deposit to the Superintendent of Insurance, as liquidator of the Lloyds Insurance Company of America, until the claims of the creditors of the Northeastern Surety Company to whom such surplus * * * belongs shall be paid in full, but that such surplus shall be distributed ratably and in proportion among the general creditors of the Northeastern Surety Company if insufficient to pay such claims in full."

Hearings were held by the referee to determine the merits of the three claimants' objections.

There was some testimony that Northeastern Surety Company continued to write policies throughout the year 1930. However that may be, there seems to be no doubt that Lloyds Casualty assumed or reinsured them.

The firm of Spalding & McCabe had been retained (by Mr. Sohst, attorney for Northeastern) in 1930 or 1931, to act as trial counsel, but the actions did not reach trial in any volume until considerably later. They billed Northeastern, or Mr. Sohst as attorney for the Northeastern, from time to time for such services, and their bills were paid. The claims here presented are for services actually rendered in defending actions in 1933, for which the bills were outstanding and unpaid at the time of the liquidation in August, 1933, amounting to $2,035.16.

In the claim of Mr. Doherty (also retained by Mr. Sohst in 1930 or 1931) certain of the actions defended were insured by policies of Lloyds Casualty. The proof of claim is annotated so as to indicate which of the claims represent claims against Northeastern and which represent claims against Lloyds Casualty. The total amount of this claim is $3,075, made up of $1,825 claimed for defending actions on behalf of Northeastern and $1,250 claimed for defending actions on behalf of Lloyds Casualty.

In the claim of Thomson & McGinty (likewise retained by Mr. Sohst in 1930–1931), the testimony of Mr. Thomson was that all the actions involved in his proof of claim were insured by policies of Northeastern. Their claim amounted to $1,402.75.

The referee found that none of these claimants had any knowledge or notice of the transaction of 1930 between Northeastern and Lloyds Casualty, nor any knowledge of the actual relations between these two corporations. The claimants believed until August, 1933, that Northeastern was a separate and going concern; they believed that they were employed by it in all actions insured by it and that they were working exclusively for it in such actions. They sent their bills to it and were paid, so far as they knew, by it.

The referee also found that the services rendered were all worth at least the amounts of the respective bills upon which these claims are based, and that the disbursements included in those bills were the disbursements actually incurred by the respective claimants in connection with the defense of the actions referred to, in such claims.

However, the referee reported (in part) that " The fund created by the deposit made pursuant to Section 71 is a trust for the persons for whose benefit the statute required it. These persons are the Northeastern policyholders and no one else. * * * The trust is not for the protection of creditors other than policyholders because the statute says nothing about them. * * * In 1922, the words ' and creditors ' were inserted into Section 71 by an amendment (C. 659, L. 1922). A year later, these two words were taken out again by Chapter 814 of the Laws of 1923. From this legislative history it is apparent that the omission of the words ' and creditors ' was not inadvertent. Whatever the reasons, the matter was considered. The statute means exactly what it says." The referee concluded that " These claimants became general creditors of Northeastern in 1933. For the reasons stated above, their claims must be allowed only as general claims against the estate of Lloyds Insurance, with no share in the special fund except as any surplus thereof may become a part of the general assets of Lloyds Insurance for the benefit of all its general creditors."

Section 71 of the Insurance Law must be read in conjunction with section 72, entitled " Withdrawal of securities upon relinquishment of business," reading, in part, as follows:

" When any such corporation shall desire to relinquish its business, the Superintendent shall, on the application of such corporation under the oath of its president or principal officer and secretary or actuary, give notice of such intention in a paper at Albany in which notices by State officers are required by law to be published at

least twice a week for six months. After such publication, he shall deliver up to such corporation the securities held by him belonging to it, upon being satisfied by an exhibition of the books and papers of such corporation and on examination made by himself or by some competent person to be appointed examiner by him, and upon the oath of the president or principal officer and the secretary or actuary of such corporation that all its debts and liabilities of every kind are paid and extinguished that are due or may become due upon any contract or agreement made within the United States.

" The Superintendent may also, from time to time, deliver up to such corporation, or its assignees, any portion of such securities on being satisfied, in the manner and form hereinbefore required, or upon any other competent proof, that all the debts and liabilities of every kind that are due, or may become due, within the United States are less than the amount of the portion of such securities he shall still retain."

It is obvious from these provisions that Northeastern Surety Company could not have obtained the return of the deposit without first proving that its debts to the claimants had been paid. It obviously could not assign to Lloyds Casualty or Lloyds Insurance any greater rights. The language of the reinsurance agreement between Northeastern Surety Company and Lloyds Casualty indicated that the parties did not intend to make the transfer except " subject to any and all liabilities of the Northeastern Surety Company as shown by its books and records, and any possible, future, contingent liability, presently known or unknown."

The amendment in 1922 to section 71 inserting the words " and creditors " (Laws of 1922, chap. 659), and omission of these two words in the amendment of 1923 (Laws of 1923, chap. 814), cannot be construed to mean that sections 71 and 72 of the Insurance Law were no longer to be read together when an issue involving the construction of those sections should arise.

The provisions of section 71 make the deposit a trust fund for the benefit of policyholders, and section 72 makes any surplus remaining after the satisfaction of the claims of policyholders a trust fund for the benefit of the creditors of the depositing company.

The history of the legislation shows that sections 71 and 72 have been parts of the Insurance Law since 1892. Section 71-a was added to the Insurance Law by chapter 659 of the Laws of 1922. Before 1922 it was necessary to consider section 72 as relating to the deposit required by section 71. Section 71-a has, in part, to do with securities deposited by mutual insurance companies formed for the purpose of doing a life, health or accident insurance business. Obviously section 71-a (enacted in 1922) cannot affect the legal

effect to be deduced from the provisions of sections 71 and 72. They should be read together to reach a result which will compensate for services admittedly rendered.

The policyholders have been paid, so the claimants, as general creditors of Northeastern Surety Company, are entitled to share in the surplus of the statutory fund now here before it is transferred to the liquidator of the Lloyds Insurance Company of America.

Therefore, the orders should be reversed, with twenty dollars costs and disbursements, and the objections of the claimants sustained, and said claimants be permitted to participate in the surplus of the Northeastern deposit fund before it is transferred to Lloyds Insurance Company of America.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Orders unanimously reversed, with twenty dollars costs and disbursements to the appellants, and the objections of the claimants sustained, and said claimants permitted to participate in the surplus of the Northeastern deposit fund before it is transferred to Lloyds Insurance Company of America. Settle orders on notice.