AMERICAN SAMOA GOVERNMENT, Plaintiff,

v.

## AMERIKA SAMOA BANK, INSURANCE COMPANY OF SAMOA, LA FENIX BOLIVIANA S.A. DE SEGUROS Y REASEGUROS, Defendants.

High Court of American Samoa
Trial Division

CA No. 157-96

December 4, 2000

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAUANU'U, Temporary Associate Judge.

Counsel: For Plaintiff, Fiti A. Sunia, Assistant Attorney General
For Defendant Amerika Samoa Bank, William B. Reardon
For Defendant Insurance Company of Samoa, L. Su'esu'e Lutu and Deanna Sanitoa
For Defendant La Fenix Boliviana, Roy J.D. Hall, Jr, and Brian M. Thompson

## OPINION AND ORDER

Plaintiff American Samoa Government ("ASG") initiated this action for declaratory relief on November 27, 1996, to resolve the status of a $50,000 statutory deposit. The case came for trial on March 10 and 27, 2000. All parties were present by counsel.

## Facts

The funds were held by defendant Amerika Samoa Bank ("ASB") until commencement of this litigation, and were then deposited in the Court's registry. Entitlement to the funds is contested by two parties: (1) the Insurance Company of Samoa, Insurance and Reinsurance, Inc. ("ICS"), previously known as "La Fenix of Samoa, Insurance and Reinsurance"; and (2) John C. Craft, the court-appointed Special Deputy Liquidator ("Liquidator") for La Fenix Boliviana S.A. De Seguros y Reaseguros, Insurance and Reinsurance, Inc. ("LFB").

The status of the statutory deposit depends upon a number of issues complicated by the parties' variable arguments and misrepresentations, as well as the greater context of this case within a scheme of international insurance fraud.

LFB is a foreign corporation incorporated in Bolivia. On December 1, 1993, ASG's Insurance Commissioner issued a Certificate of Authority to transact insurance business as an insurer to LFB. The ASG Attorney General ("Attorney General") later directed LFB to meet the requirements for obtaining an insurer's bond under A.S.C.A. § 29.0302(6).[1] On or about January 27, 1994, LFB was granted a foreign

---

[1] A.S.C.A § 29.0302(6) requires that

Any person desiring to transact insurance business in American Samoa as an insurer shall file with the commissioner an application for a certificate stating the class or classes of insurance which it proposes to transact

corporation permit to transact business pursuant to A.S.C.A. § 30.0304 by the Governor of American Samoa. ASG's Treasurer incorrectly issued a Certificate of Incorporation as a domestic corporation to LFB on January 31, 1994.

ICS, though it has represented itself as a local branch of LFB, was established as a separate corporation. Its Articles of Incorporation, dated July 11, 1994, used the name of "La Fenix of Samoa Incorporated, (dba LFS-Insurance and Reinsurance)." ASG's Treasurer issued to it a Certificate of Incorporation under the name of "La Fenix of Samoa" "LFS") on November 22, 1994. No provision in the Articles of Incorporation of LFS, nor any documents presented to this Court, give rise to any indication that LFB and LFS were parent-subsidiary or sibling corporations.

On November 16, 1994, attorney Ellen Ryan ("Ryan") deposited $50,000 with ASB, in the name of LFB, in return for a certificate of deposit. The certificate of deposit was assigned to ASG's Insurance Commissioner. The $50,000 certificate was thereby established as a statutory deposit in lieu of the insurer's bond for the foreign corporation LFB, to obtain and sustain LFB's Certificate of Authority.

On October 27, 1994, Ryan, an officer, director and attorney of ICS and attorney for LFB. was authorized to make the $50,000 deposit by Cheryll Coon ("Coon"), representing LFB. Less than one month later, on November 24, 1994, the United States District Court for the Western District of Missouri enjoined Coon from "dissipating, encumbering or disposing of specific enumerated assets that the U.S. Government alleged are subject to forfeiture" in relation to LFB and other companies. *See United States v. Riley*, 78 F.3d 367, 369 (8th Cir. 1996). On February 13, 1996, before the same federal district court, Coon was convicted of ten felonies relating to insurance fraud, and her business partner, Travis Riley, was convicted of eleven felonies. *See Angoff v. M&M Mgmt. Corp.*, No. CV 194-799CC, slip op. at 4 (Cir. Ct. of Cole County, Mo. April 2, 1996).

On November 25, 1994, the day after Coon was enjoined with respect to LFB's assets, LFS's board of directors resolved to change the name of LFS to "Insurance Company of Samoa, Insurance and Reinsurance, Inc." pursuant to A.S.C.A. § 30.0120. On January 13, 1995, ASG's Treasurer

---

accompanied by the following: . . . a good and sufficient bond . . . [or] in lieu of the bond as required by this section, the applicant may deposit with the commissioner acceptable unencumbered securities or other unencumbered assets of the value of $50,000 as surety subject to the same conditions as the bond . . . .

issued a Certificate of Incorporation in the amended name. It is noted that until and after this point in time, LFS or ICS, as an independent corporation, never submitted an application to ASG's Insurance Commissioner for a Certificate of Authority to transact insurance business in American Samoa. Nor has LFS or ICS ever complied with the many requirements listed under A.S.C.A. § 29.0302, including, most pointedly, submitting financial statements and creating a $50,000 insurer's bond under A.S.C.A. § 29.0302(4) and (6), respectively.

About two months after LFS changed its name to ICS, aggressive and affirmative steps were taken to shift the insurance identity of LFB into that of ICS. On January 20, 1995, Ryan wrote a letter to ASG's Insurance Commissioner, misrepresenting that ICS was "originally called La Fenix Boliviana Insurance and Reinsurance Inc.," but was now incorporated locally. "[M]y clients wish to emphasize the company as a local entity and, we have since gone through a change of name," she stated. In the letter, Ryan implied that the name of the company LFB was to be changed on all official documents, including the foreign corporation permit to transact business, the insurer Certificate of Authority, and the business license. Based on this letter and other conversations, and without further apparent investigation, ASG's Insurance Commissioner issued a continuance of Certificate of Authority to ICS on January 24, 1995, and a Certificate of Authority on February 2, 1995. Finally, on April 26, 1995, Ryan had ASB change the name of the $50,000 statutory deposit account from LFB to ICS, still subject to the assignment to ASG's Insurance Commissioner. ICS began negotiating insurance. contracts and conducting insurance business in May or June of 1995 and, under the evidence at least, has continued to conduct insurance business since.

The Circuit Court of Cole County, State of Missouri, rendered judgments and orders on April 2, 1996, and April 10, 1996, regarding the appointment of the Liquidator for several persons and entities including LFB. On April 12, 1996, the Liquidator's attorney alerted ASG's Insurance Commissioner by letter that the Liquidator was entitled to LFB's assets under any name, potentially including the $50,000 statutory deposit. Yet on November 1, 1996, ASG's Insurance Commissioner then in office, Albert Atuatasi ("Atuatasi") granted a continuance of Certificate of Authority to ICS. Then, on November 21, 1996, Don Fuimaono ("Fuimaono"), an ICS stockholder, and Atuatasi together went to ASB and requested that the bank release the $50,000 certificate of deposit to ICS. ASB refused this request, based on the advice of the Attorney General's office. ICS cross-claims against ASB for general, special and punitive damages resulting from ASB's failure to release the certificate of deposit.

253

ASG moved for summary judgment on February 5, 1997, joined by ASB and the Liquidator for LFB, on the issue of the separate identities of LFB and ICS, which this Court denied in an order entered on May 20, 1997.

## Discussion

We address four issues:

(1) Whether the $50,000 certificate of deposit in the account name of ICS and assigned to ASG's Insurance Commissioner is the deposit required by statute for LFB or for ICS.

(2) Whether ASG's Insurance Commissioner has the right to retain control over the statutory deposit until the existence of any and all policies issued by either ICS or LFB, and all claims against those policies, have been determined.

(3) Whether ICS or the Liquidator for LFB is entitled to the interest earned on the statutory deposit during the period that the deposit was held by ASB.

(4) Whether ASB is liable to ICS for refusing to release the statutory deposit to ICS.

A. Statutory Deposit for LFB or ICS

The first issue concerns whether the $50,000 certificate of deposit is the statutory deposit for LFB or for ICS.

The statutory deposit was originally established in the name of LFB on November 16, 1994, and. was assigned to ASG's Insurance Commissioner in fulfillment of the insurer's bond requirement in A,S.C.A. §29.0302(6) for obtaining a Certificate of Authority to transact insurance business in American Samoa as an insurer. The name on the account was changed from LFB to ICS on April 26, 1995, and the certificate of deposit has been in the account name of ICS since then. It is clear that LFB originally made the statutory deposit on its own behalf. The question is whether the later change in the named principal on the statutory account has any substantive effect on LFB's ownership of the deposit. We hold that it does not.

 As a matter of law, the AS.C.A. § 29.0302(6) statutory deposit is not transferable or assignable. The insurance laws of American Samoa, A.S.C.A. §§ 29.0301 to 29.0324, do not provide for transfer of ownership of insurer's bonds or statutory deposits, save for transfers by an insurer to ASG's Insurance Commissioner, and only then "for the use and benefit of any person injured by the breach [of the condition of any

bond]." A.S.C.A, §29.0302(6). The provision further declares that the surety on the bond, or in this case, the bank holding the statutory deposit, "shall be answerable up to the amount of the [deposit] for all judgments, decrees, or orders given, made or tendered against the principal on the [deposit] by the High Court of American Samoa for the payment of money . . . ." *Id.* It is clear from these relevant statutory provisions that the statutory deposit, once made, is not freely transferable, but rather is specifically committed to rendering legal obligations incurred by the principal.

Relevant case law further affirms our interpretation. It has been variously and unanimously held that a deposit made by an insurance company as a condition of its right to do business constitutes a trust fund for the benefit of the insurer's policyholders, and for the insurer's creditors after the claims of policyholders are satisfied. *See, e.g., Am. United Life Ins. Co. v. Fischer*, 130 F.2d 643 (8th Cir. 1942); *Ingram v. Reserve Ins. Co.*, 281 S.E.2d 16 (N.C. 1981); *In re Lloyds Ins. Co. of Am.*, 290 N.Y.S. 759 (N.Y. 1936); *see also* GEORGE J. COUCH & RONALD A. ANDERSON, COUCH ON INSURANCE § 22.9 (2d ed. 1984). The statutory deposit is essentially a trust for the insured; its establishment and maintenance must be directed towards ensuring that insurers perform their obligations. The law is meaningless, and the statutory deposit spurious, if the named principals on the bond or deposit may be changed, for whatever reason, to allow insurers to evade judgment. An insurer such as LFB may assign its statutory deposit to another insurer, but it must first comply with the proper legal means for establishing a formal succession of interest. An assignee insurer is entitled to the statutory deposit of an assignor insurer only if the assignee insurer has assumed all obligations liabilities and assets of the assignor insurer, through corporate merger or other lawful means. *State ex rel. Safeguard Ins. Co. v. Vorys*, 167 N.E.2d 910, 914 (Ohio 1960); *Lucas v. Pittsburgh Life & Trust Co.*, 119 S.E. 109, 113 (Va. 1923).

Though ICS may have regarded itself as a successor-in-interest to LFB, as a. factual matter, ICS and LFB remain separate and distinct entities. LFB is a foreign corporation incorporated in Bolivia; ICS is incorporated in American Samoa. Ryan and Fuiamono have used the Certificate of Incorporation mistakenly issued by the Treasurer to LFB on January 31, 1994, to misrepresent LFB as a domestic corporation which became ICS. However, one company's domestic certificate of incorporation does not establish an identity between it and another company holding a separate, local certificate of incorporation. Moreover, LFB neither applied for nor complied with the statutory requirements concerning domestic incorporation; its Certificate of Incorporation is *prima facie* invalid, A.S.C.A. § 30.01.

255

The parties have all raised the possibility of treating LFB and ICS as a single corporation, given that ICS has represented itself as such, and that business decisions for both entities seem to have been made by or through the same persons. Though this would be convenient for practical purposes, we do not find sufficient legal basis for holding LFB and ICS to be the same corporation. Neither merger nor other change of corporate form has occurred to formally establish shared interests between LFB and ICS. LFB owns no stock of ICS, and ICS owns no stock of LFB. There is no evidence of a formal transfer of obligations, liabilities and assets from LFB to ICS. There is, in short, nothing to suggest that the companies are affiliated in any parent-subsidiary or sibling sense, which would in turn trigger evaluation based on alter-ego or instrumentality theories.[2]

Moreover, even if we were to hold, that ICS had somehow succeeded LFB's interests, we still could not authorize release of the statutory deposit to ICS. Cases such as *Lucas v. Pittsburgh Life & Trust Co.* have held that a resultant corporation, in order to withdraw statutory deposits, must have complied with the appropriate regulations for conducting insurance business as an insurer. 119 S.E. at 113. In American Samoa, this means that the company must hold the proper Certificate of Authority, have an independent statutory deposit or insurer's bond, and be approved by the Insurance Commissioner. A.S.C.A. §29.0302. In other words, the resultant company attempting to withdraw the funds must be a valid insurer, rather than merely a recipient shell.

 We cannot authorize ICS to take the statutory deposit for LFB because it does not qualify as a valid insurer. Specifically, ICS has never subjected itself to the procedures delineated by A.S.C.A. § 29.0302 to obtain the three Certificates of Authority issued to it to transact insurance business in American Samoa. It has never independently placed an insurer's bond or statutory deposit. It has never submitted financial or business statements for evaluation. The three Certificates of Authority issued to ICS—on January 24, 1995, February 2, 1995, and November 1, 1996, by two different ASG Insurance Commissioners—were all obtained by misrepresentation in violation of A.S.C.A. § 29.0214, prohibiting false or misleading filings with the Commissioner. The laws

---

[2] These theories would enable the Court to "pierce the corporate veil" and hold a dominating or parent organization liable for the actions of its subsidiary. The applicable statute is straightforward in authorizing the Court to hold a parent stockholder liable for bad-faith disrespect of the corporate form. A.S.C.A. § 30.0117 states:

> A bad-faith failure to substantially comply with the requirements for the organization of a corporation renders the individual property of the stockholder liable for corporate debts.

of American Samoa do not grant ASG's Insurance Commissioner absolute discretion to grant Certificates of Authority but rather constrain the Commissioner to follow and enforce all insurance laws. A.S.C.A. § 29.0201(b). The Commissioner may only issue continuances of Certificates of Authority so long as the insurer is entitled to a Certificate of Authority in the first place, A.S.CA. § 29.0306(a), and the Commissioner has discretion to reinstate Certificates of Authority that have expired only after all failures have been cured. A.S.C.A. § 29.0306(c). In short, the Insurance Commissioner does not have unbridled discretionary authority to issue Certificates of Authority; all insurers must comply with the specifically delineated statutory requirements of A.S.C.A. § 29.0302. ICS has not complied with these mandates. We therefore declare null and void the three Certificates of Authority issued to ICS. ICS is not authorized to transact insurance business as an insurer, and is not qualified to obtain the statutory deposit.

LFB is the true owner of the $50,000 statutory deposit. ICS has not been established as a legal successor-in-interest to LFB, and even if it were, ICS is not a legally valid insurer. ICS is barred from both conducting the business of insurance, as well as from taking LFB's deposit. The Liquidator is, therefore, entitled to recover the statutory deposit.

B. Retention of the Statutory Deposit

We have established that the $50,000 certificate of deposit under A.S.C.A. § 29.0302(6) is a trust for LFB's policyholders. Who then, is entitled to it, and when?

The Liquidator argues that LFB has not issued insurance policies within American Samoa, that it can no longer do so, and that this Court can no longer make any judgments, decrees or orders against LFB according to the Liquidation Order which is given full faith and credit pursuant to Article IV, Section 1 of the United States Constitution. He thus argues that he is entitled to withdraw the statutory deposit free and clear of any competing interest. We agree that the Liquidator for LFB is entitled to the deposit, as per the orders of *Angoff v. M & M Management Corp.*, No. CV 194-779CC (Cir. Ct. of Cole Co., Mo. April 2, 1996), regarding the liquidation of M & M companies. However, we do not find him to be entitled to the deposit entirely 'free and clear" of competing claims.

The mere fact that a company has ceased to do business within a jurisdiction does not warrant full withdrawal of the statutory deposit. *See Cont'l Band & Trust Co. v. Gold*, 140 F. Supp. 252, 255 (E.D.N.C. 1956); *S. British Ins. Co. v. Younger*, 58 F.2d 1049, 1049-50 (S.D. Ohio 1932). In *South British*, a foreign insurance company had ceased to do business in Ohio and was not allowed to withdraw its statutory deposit,

though created under Ohio law, because the company still had policyholders in other states. *S. British Ins. Co.*, 58 F.2d at 1049. We agree with the crux of this case, which is that a statutory deposit may not be withdrawn by a company insofar as any policyholders, not only those local policyholders for whom the trust was originally created, have been and remain obligated thereby. It has been further held that a statutory deposit may only be returned to an insurer when the insurance commissioner is satisfied that all obligations for which the deposit was made to secure have been paid or are extinguished. *State ex rel. Cont'l Cas. Co. v. Stafford*, 160 N.E. 239, 241 (Ohio 1927); *see also* COUCH & ANDERSON, *supra*, at § 22:115.

In this case, the LFB statutory deposit was used by ICS to obtain authorization to transact business in American Samoa. Beginning in 1995, ICS used this misbegotten authorization to attract and entrap customers to whom it might now still owe obligations, despite lacking actual authorization or legal foundation to do so. Because there are still possible policy holders remaining whose business was assured by the contested statutory deposit, we will not allow it to be withdrawn until these obligations are cleared.

 It may be argued that LFB, as the true owner of the statutory deposit, need not oblige its statutory deposit to the policyholders of ICS, an entirely separate corporation and insurer. However, there is case law which supports this equitable course of action. In *EW Truck & Equipment Co. v. Coulter*, we treated three separate entities as a single entity to construe a contract, since they held themselves out as such. 19 A.S.R.2d 61, 66 (Trial Div. 1991). Also, the Appellate Court of Indiana in *Conrad v. Olds* held that a true owner may be estopped from asserting title to deposited securities when he knows of and acquiesces to their use as a part of a trust fund for the protection of policyholders. 37 N.E.2d 297, 303 (Ind. App. Ct. 1941); *see also* COUCH & ANDERSON, *supra*, at § 22:109. As the *Conrad* court also reasoned, an agent's knowledge will be imputed to the principal, when the matter is within the scope of the agent's authority and with reference to matters over which the agent's authority extends. 37 N.E.2d at 303; *see also Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909 (Ind. App. 1999). In this case, LFB seems not only to have known of the nature of the transfer, but Ryan, its director, officer, and attorney, effectuated it. Therefore, due to its affirmative activity, knowledge, and acquiescence, LFB is estopped from claiming the securities.

 In *Niccolls v. Jennings*, where one party's financing and cooperation masked the other party's business with an apparent condition of solvency and enabled the other party to attract the patronage of customers, the Florida Supreme Court applied principles of equity to reroute stock assets so as to restore defrauded customers to their original

position. 92 So. 2d 829, 834 (Fla. 1957). Similarly, the case at hand involves misappropriation by one party of another's deposit in order to make an illegitimate business seem legitimate. We thus apply principles of equity to estop LFB, or the Liquidator for LEB, from withdrawing the statutory deposit so long as innocent policyholders might be defrauded thereby.

We have concluded that, as a matter of law, the statutory deposit belongs to LFB. We now hold that, as a matter of equity, the statutory deposit is to be held by ASG's Insurance Commissioner in trust for the policyholders of both LFB and ICS, the remainder to return to the Liquidator for LFB. The funds will, however, remain in the Court's registry to be disbursed by court order only.

## C. Entitlement to the Interest Earned on the Statutory Deposit

■ We now address the corollary issue of entitlement to the interest based on the statutory deposit account with ASB. Clearly, the interest earned on a statutory deposit belongs to the insurance company for whom the deposit is made. *See Des Moines Mut. Hail & Cyclone Ins. Ass'n v. Steen*, 175 N.W. 195, 195 (N.D. 1919).

We hold that the Liquidator for LFB is entitled to recover the interest earned on the statutory deposit while ASB held these funds and paid to ICS. According to Fuimaono, he twice collected interest on the statutory deposit in ICS's name, each time in the amount of approximately $2,000.00. However, details are not in evidence as to the dates and exact amounts of any such payments to Fuimaono on ICS's behalf. We will schedule a hearing, at the Liquidator's request, to determine these facts should he decide to pursue this matter.

## D. ASB's Refusal to Release the Statutory Deposit

It remains to be determined whether ASB owes damages to ICS for refusing to release the statutory deposit.

Specifically, ICS contends for damages of two million dollars due to ASB's refusal on November 21, 1996, to release the deposit to ICS. The issue is whether the nominal owner of a statutory deposit is entitled to withdraw it, despite having no legal basis to do so. The short answer is no. ASB was neither obligated nor authorized to release the $50,000 to ICS, and ICS is not entitled to damages based on ASB's appropriate refusal.

■ ASB was under no fiduciary duty to release the statutory deposit to ICS. The certificate of deposit was a special account deposit, assigned to ASG's Insurance Commissioner for use as a statutory deposit in lieu of

259

an insurer's bond under A.S.C.A. § 29.0302(6). For such special account deposits, a bank is obligated to exercise reasonable care as bailee of the deposit, and must use it for its intended purpose. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Bd. of Supervisors of the County of Los Angeles*, 208 P.2d 772, 775 (Cal. Ct. App. 1949).

In this case, as we have already stated, the deposit was established to fulfil the statutory deposit requirement under A.S.C.A. § 29.0302(6), for LFB to obtain a Certificate of Authority to transact business as an insurer in American Samoa. The certificate of deposit qualifies as a special account, assigned to ASG's Insurance Commissioner as a trust for policyholders to whom LFB was obligated. Thus, ASB was obligated to exercise reasonable case to ensure that the account was used for the explicit purpose of protecting policyholders.

■ ASB was correct in refusing to release the statutory deposit to Fuimaono, representing ICS, and Atuatasi, then ASG's Insurance Commissioner, when they attempted to withdraw the deposit on November 21, 1996. No formal evidence or documentation was proffered to ASB regarding the planned purpose of the funds, by which ASB might have adjudged the legitimacy and seriousness of the withdrawal request. Further, ASB immediately consulted with the Attorney General's office, which informed ASB by letter that the office was investigating a claim for those funds by a court-appointed liquidator, and that ICS was being investigated by the FBI. The Attorney General requested that ASB not release the bond to ICS or Atuatasi "without further notice from this office or order of court of competent jurisdiction." The lack of substantiation by Fuimaono and Atuatasi on the one hand, and the Attorney General's affirmative advice on the other, confirm that ASB exercised reasonable care in protecting the deposit as regards its intended purpose. Second, ICS has never been and never will be entitled to withdraw the deposit. We have found LFB to be the owner of the statutory deposit, to which ICS has no right. ICS's policyholders are entitled to claim it insofar as they have been injured by the fraud perpetrated by ICS in falsely holding itself forth as a properly-endowed, properly-authorized insurer under the laws of American Samoa. ICS was not damaged by ASB's refusal to release to it the funds in the certificate of deposit.

## Order

1. ICS shall conduct no further insurance business in American Samoa until it properly complies with the statutory requirements for doing so.

2. ICS shall pay to the Liquidator for LFB the total amount of all interest earned on the $50,000 statutory deposit that Fuimaono collected in the name of ICS while ASB held the deposit. The Liquidator should file a

motion for an evidentiary hearing to determine the dates of payments and exact amounts paid by ASB to Fuimaono acting on ICS's behalf.

3. ICS's cross-clam against ASB is dismissed.

4. ASG's Attorney General and Insurance Commissioner shall immediately issue public notices to advise the public of the liquidation of LFB and that neither LFB nor ICS is an authorized insurer in American Samoa.

5. ASG's Attorney General and Insurance Commissioner shall investigate to determine who are the policyholders of LFB and ICS what is the extent of their claims against LFB or ICS on account of their insurance policies; and if they still have any potential exposure to loss.

6. After 120 days, if no policyholders of LFB or ICS emerge or are found, then the Clerk of Court shall pay to the Liquidator for LFB the amount of $52,540.20 representing the statutory deposit of $50,000 and interest earned on the deposit that ASB transferred to the court's registry, along with the interest earned on this amount while held in the registry.

7. If policyholders for LFB or ICS are identified, then the entire amount of the funds representing the statutory deposit shall be retained in the Court's registry until all claims against LFB or ICS, on account of the policyholders' insurance policies are cleared by this Court.

It is so ordered.