Nos. 95-2694, 95-2778, and 95-2781

United States of America,          \*
                                 \*
     Plaintiff - Appellee,     \*
                                 \*
     v.                          \*
                                 \*
Ferrell Travis Riley; Cheryll   \*
S. Coon; Jack L. Brown,      \*
                                 \*
     Defendants - Appellants,  \*
                                 \*
The Direct Holding Company,    \*  Appeals from the United States
d.b.a. Direct Data Processors; \*  District Court for the
L.F.B. Insurance and            \*  Western District of Missouri.
Reinsurance, a division of     \*
La Fenix Boliviana S.A. De     \*
Seguros Y Reaseguros; National \*
and International Company;     \*
Buffalo Lodge and Resorts      \*
Management Company, Inc.;       \*
Business First Entertainment,  \*
                                 \*
     Intervenors - Appellants.  \*

_____

Submitted:  December 13, 1995

Filed:  March 11, 1996

_____

Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,[*]
    District Judge.

_____

LOKEN, Circuit Judge.

    A criminal defendant convicted of violating the Racketeer Influenced
and Corrupt Organizations Act ("RICO") "shall forfeit"

_____

[*]The HONORABLE WILLIAM W. SCHWARZER, United States
District Judge for the Northern District of California,
sitting by designation.

his or her interests in the RICO enterprise, assets acquired in violation of the Act, and any proceeds of racketeering activity. 18 U.S.C. § 1963(a). After a RICO indictment, but prior to the defendant's conviction, the district court may enter orders "to preserve the availability" of property subject to forfeiture. § 1963(d)(1). These appeals challenge preconviction orders appointing a monitor, and later a receiver, to manage companies allegedly owned or controlled by RICO defendants Ferrell Riley, Cheryll Coon, and Jack Brown. Appellants are these defendants plus affected companies that were not named in the RICO indictment (the "Intervenor Companies").

At oral argument, counsel for the government could not identify what property is subject to forfeiture if defendants are convicted, could not refer us to record evidence establishing the extent of defendants' interests in the affected companies, and could not reconcile the relevant statutory language with the preconviction restraints the government had obtained. Accordingly, we immediately issued an Order vacating the district court's monitor and receiver orders. We now explain the reasons underlying our disposition of these appeals.

**I.**

Count One of the November 16, 1994, indictment charged Riley, Coon, and Brown with violating RICO by using Meadowlark Insurance Company, Magnolia Acceptance Corporation, M & M Management Company, and Commercial Indemnity Assurance (the "Named Companies") as an enterprise through which defendants bribed state officials and defrauded insurance regulators, a group health care insurance plan, and a podiatrists' association.[1] At the end of the lengthy

---

[1]Meadowlark is a surplus lines insurer. Magnolia is a premium finance company. M & M manages Meadowlark and other insurers. Commercial Indemnity is Meadowlark's successor.

-2-

indictment, the government stated its "intent to forfeit . . . at least $28 million and all interests and proceeds traceable thereto, including but not limited to real property, automobiles, bank accounts and personal property."  An FBI agent later testified that $28 million is the government's estimate of the Named Companies' gross receipts during the 1988 to 1992 period.

After the indictment issued, the government immediately applied for an order restraining defendants from dissipating, encumbering, or disposing of specific enumerated assets that the government alleged are subject to forfeiture -- real property, automobiles, and financial institution accounts.  On November 21, 1994, the district court issued that order, and it later extended this restraint to additional enumerated financial institution accounts.  Defendants do not challenge these restraints on appeal, and our prior order left them in place.[2]

The government next moved for appointment of a monitor to examine the affairs of the Named Companies and the Intervenor Companies in order to prevent "dissipation of the restrained assets and/or the neglect of the ongoing businesses."  Following an evidentiary hearing, the district court issued orders appointing a monitor and granting the monitor broad powers to investigate the Named Companies and the Intervenor Companies, to account for and take control of the funds of those companies, to require reports and information, and to disapprove broad categories of business activity, including routine insurance transactions.

_____

[2]Given the plain language of § 1963(d)(1)(A), we question whether a preconviction restraining order may affect property not fairly encompassed within the forfeiture allegations of the indictment, particularly given the forfeiture pleading requirements of Fed. R. Crim. P. 7(c)(2).  See United States v. Sarbello, 985 F.2d 716, 719-20 n.8 (3d Cir. 1993).  However, as appellants have not raised that issue, we leave it for another day.

On June 21, 1995, at the request of the monitor, the district court converted the monitor to a receiver, giving him even broader powers of investigation plus total control over the day-to-day operations of the Named Companies and the Intervenor Companies. Defendants and the Intervenor Companies appeal these monitor and receiver orders.[3]

## II.

The lengthy monitor and receiver orders do not discuss the relationship between the Named Companies, the Intervenor Companies, and the specific assets that the district court initially restrained, or the extent to which assets of these companies might ultimately be subject to RICO forfeiture. Nor do these orders discuss the statutory authority for the virtually unlimited powers granted to the monitor, and then to the receiver, to manage the affairs of these companies, many of which are engaged in insurance businesses that are subject primarily to state regulation by reason of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b).

---

[3]The government argues that these appeals are in large part untimely because they were not filed within the ten days prescribed for commencing a criminal appeal. See Fed. R. App. P. 4(b). However, Rule 4(a), which governs civil appeals, applies if the order being appealed is "essentially a civil proceeding arising from a criminal one." United States v. Brown, 835 F.2d 176, 179 (8th Cir. 1987). The merits of a preconviction order restraining forfeitable assets are governed by the civil standards for temporary restraining orders and preliminary injunctions. See United States v. Lewis, 759 F.2d 1316, 1324-25 (8th Cir.), cert. denied, 474 U.S. 994 (1985). And postconviction proceedings to recover forfeited property are considered civil for purposes of Rule 4, whether commenced by the criminal defendant or by a third party. See United States v. Mosquera, 845 F.2d 1122, 1125 (1st Cir. 1988); United States v. Lavin, 942 F.2d 177, 181 (3d Cir. 1991). We conclude that an order imposing preconviction restraints prior to forfeiture is, in substance, a civil proceeding for purposes of Rule 4. Therefore, these appeals are timely.

Preconviction restraints are extreme measures. Before a preconviction restraint may issue, the government must demonstrate at a hearing that the RICO defendant is likely guilty and that the property to be restrained will be subject to criminal forfeiture. See Lewis, 759 F.2d at 1324. And the preconviction restraint order should include specific findings permitting an appellate court to determine whether the property restrained is subject to forfeiture. See In re Assets of Martin, 1 F.3d 1351, 1361-62 (3d Cir. 1993). The government virtually ignored these procedural safeguards in this case. A brief review of the relevant statutes and the rather barren record on appeal reveals that serious error resulted.

We begin with the statute authorizing preconviction restraints, 18 U.S.C. § 1963(d)(1):

> Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section --
>
> (A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

This provision was added to RICO in 1984 to give the court power "to assure the availability of the property [subject to forfeiture] pending disposition of the criminal case." S. Rep. No. 225, 98th Cong., 2d Sess. 204, reprinted in 1984 U.S.C.C.A.N. 3182, 3387. Appellants concede that the term "any other action" in § 1963(d)(1) includes the discretion to appoint a monitor or receiver when appropriate. However, these types of preconviction restraints are "strong medicine and should not be used where measures that are adequate and less burdensome" are available. United States v. Regan, 858 F.2d 115, 121 (2d Cir. 1988). Cf. Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316-17 (8th Cir. 1993).

Preconviction restraints may only be used to preserve the availability of property subject to forfeiture under § 1963(a), that is:

>    (1) any interest the [RICO violator] has acquired or maintained in violation of section 1962;

>    (2) any--

>       (A) interest in;
>       (B) security of;
>       (C) claim against; or
>       (D) property or contractual right of any kind affording a source of influence over;

>    any enterprise which the [RICO violator] has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

>    (3) any property constituting, or derived from, any proceeds which the [RICO violator] obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

In this case, the government never identified what assets of the Named Companies and the Intervenor Companies are subject to forfeiture under § 1963(a). Under § 1963(a), only defendants' interests in the RICO enterprise and the proceeds from their racketeering activity are subject to forfeiture. Though the indictment alleged that the Named Companies are an enterprise through which defendants conducted their racketeering activities, an allegation that an enterprise was used to commit RICO violations is not enough to make the enterprise forfeitable, only defendants' interests in that enterprise. RICO's criminal forfeiture is an *in personam* remedy to punish the RICO defendants. See United States v. Conner, 752 F.2d 566, 576 (11th Cir. 1985). It does not permit the government to seize control of an enterprise that defendants used to accomplish their racketeering.

The government's allegation in the indictment that it intends to forfeit "at least $28 million" does not cure this deficiency.

The $28 million is the estimated total receipts of the Named Companies during the course of defendants' alleged RICO conspiracy. These revenues are not forfeitable under the "proceeds" provision of § 1963(a)(3). "[T]he statute says that it is the proceeds received by the defendants, not by their enterprise, that are forfeitable." United States v. Masters, 924 F.2d 1362, 1370 (7th Cir.), cert. denied, 500 U.S. 919 and 502 U.S. 823 (1991). See United States v. Olson, 22 F.3d 783, 785 (8th Cir.), cert. denied, 115 S. Ct. 320 (1994) (bank officers' salaries and bonuses are subject to forfeiture, not the bank depositors' funds). Even if the government had included the Named Companies as RICO defendants, its assertion that $28 million is subject to forfeiture would be absurd. A corporate defendant's racketeering "proceeds" are subject to forfeiture. However, while Congress used that term to spare the government the burden of proving net profits, see S. Rep. No. 225 at 199, 1984 U.S.S.C.A.N. at 3382, "proceeds" means something less than the gross receipts of a defendant's insurance business because an insurer's gross receipts would include, for example, amounts needed to pay policyholder claims. See Masters, 924 F.2d at 1370; United States v. Lizza Indus., Inc., 775 F.2d 492, 497-98 (2d Cir. 1985), cert. denied, 475 U.S. 1082 (1986).

Finally, the government failed to explain how assets of the Intervenor Companies could be subject to forfeiture. The government argued that defendants own or control the Intervenor Companies and that defendants have commingled assets of the Named Companies and the Intervenor Companies. But the statute does not authorize preconviction restraints on substitute assets. See United States v. Field, 62 F.3d 246, 248-49 (8th Cir. 1995). Thus, the conclusory testimony of the government investigators fell far short of the showing needed to impose a preconviction monitor or

receiver on the activities of companies that were not even named in the indictment.[4]

We are also concerned that the powers assumed by the monitor and receiver exceeded the statutory authority for preconviction restraints. The government initially requested appointment of a monitor in response to defendants' request that the specific initial restraints be relaxed so as to permit the payment of insurance claims. The government explained that a monitor was needed in part to prevent "the neglect of the ongoing businesses." This position appears to reflect a belief that RICO prosecutors are the proper persons to run defendants' insurance businesses and to determine which insurance claimants and creditors should be paid. They are not. Insurance regulation is the prerogative of the States.[5] And if it were not, federal bankruptcy law would provide the proper forum for distributing the inadequate assets of defendants' failed or neglected businesses. RICO provides only an *in personam* forfeiture remedy, permitting preconviction restraint and postconviction seizure of defendants' ownership interests in, and any proceeds they have drained from, the RICO enterprise. The

---

[4]After conviction, substitute assets may be forfeited in the circumstances described in § 1963(m). Some circuits therefore permit preconviction restraints on substitute assets. But those courts require a showing that assets forfeitable under § 1963(a) are unavailable, a showing the government did not make in this case. See In re Billman, 915 F.2d 916 (4th Cir. 1990), cert. denied, 500 U.S. 952 (1991).

[5]See 15 U.S.C. § 1012(b). Obviously, the federal government may prosecute mail and wire fraud committed upon state insurance regulators, and other criminal exploitation of an insurance company. See, e.g., United States v. Sylvanus, 192 F.2d 96, 100 (7th Cir. 1951), cert. denied, 342 U.S. 943 (1952) (mail fraud); United States v. Cavin, 39 F.3d 1299, 1305 (5th Cir. 1994) (fraud on regulators and policyholders). But in our view, the criminal forfeiture of policyholder premiums, either without regard to the payment of insurance claims, or with the assertion of federal authority to decide which claims to pay, runs a significant risk of conflict with the McCarran-Ferguson Act's grant of primary control over the business of insurance to the States.

government here seemingly lost sight of this statutory limit on its authority.

## III.

For the foregoing reasons, we have vacated the monitor and receiver portions of the district court's preconviction restraint orders. On appeal, appellants further argue that the monitor's investigatory powers afforded the prosecution an improper discovery and evidence-gathering tool, and violated the Intervenor Companies' Fourth Amendment rights. Although these are legitimate concerns, we are satisfied that the district court properly took them into account, and we reject these contentions.

This opinion finally disposes of these appeals. Our orders of December 22, 1995, and January 16, 1996, remain in effect. The remainder of our mandate shall issue forthwith.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.