**UNITED STATES of America,**

v.

**Vinodchandra MODI, etc.,
et al., Defendants.**

**No. 1:01CR00050.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 28, 2001.

Rick A. Mountcastle and Ruth E. Plagenhoef, Assistant United States Attorneys, Abingdon, VA, for United States of America; Wyatt B. Durrette, Jr., Durrette, Irvin & Bradshaw, PLC, Richmond, VA, and Daniel K. Read, Jessee & Read, P.C., Abingdon, VA, for Defendant Vinod Modi.

John B. Russell, Jr., Becker, Russell & Becker, Midlothian, VA, for Defendant Kailas Modi.

## OPINION AND ORDER

JONES, District Judge.

The question presented is the extent of the government's ability to restrain assets of the defendants prior to trial under the racketeering and money laundering criminal forfeiture statutes. Because I find that the scope of the government's pretrial restraint is excessive, I will partially grant the defendants' motion to modify the protective order previously entered.

## I

The defendants, Vinodchandra (also known as Vinod) Modi and Kailas Modi, are husband and wife and both are physicians. They are charged in a 140 count indictment with racketeering and racketeering conspiracy, mail fraud and mail fraud conspiracy, money laundering conspiracy, federal health care program kickbacks, and illegal drug distribution.[1] In addition, the indictment seeks racketeering and money laundering forfeiture.[2] The indictment charges that Kailas Modi operated her medical practice as a sole proprietorship called Miners Medical Clinic ("MMC"), located in Oakwood, Virginia. Vinod Modi is alleged to have "associated with and/or practiced medicine at MMC" at various times.[3]

The indictment was returned on July 25, 2001. That same day, the government obtained an ex parte protective order restraining the defendants from transferring certain of their property, which property is alleged to be subject to forfeiture. A second ex parte protective order was entered July 31, 2001, adding additional property.

On October 22, 2001, the defendants jointly filed a motion to modify the protective order.[4] An evidentiary hearing was held on the motion to modify on November 2, 2001, and the motion is now ripe for decision.

## II

The defendants' property restrained by the protective order includes various in-

---

1. *See* 18 U.S.C.A. § 1962(c) (West 2000); 18 U.S.C.A. § 1962(d) (West 2000); 18 U.S.C.A. § 1341 (West 2000); 18 U.S.C.A. § 371 (West 2000); 18 U.S.C.A. § 1956(h) (West 2000); 42 U.S.C.A. § 1320a–7b(b)(1)(B) (West Supp. 2001); 21 U.S.C.A. § 841 (West 1999 & Supp. 2001).

2. *See* 18 U.S.C.A. § 1963 (West 2000); 18 U.S.C.A. § 982(a)(1) (West Supp.2001).

3. Indictment, intro., ¶ 2.

4. For convenience, I will refer to both protective orders collectively in the singular.

vestment accounts. The parties are agreed—as least for the purposes of this motion—that the current value of the investment accounts restrained by the protective order is $7,947,607.07.[5] The defendants seek to modify the protective order so that only assets worth one million dollars are restrained. They contend that under the allegations of the indictment this amount at most is subject to ultimate forfeiture if they are found guilty.

The evidence at the hearing shows that over the years in question (1988 through 1999) the medical practice by the Modis produced gross income of $13,483,418,[6] and the government argues that this income represents the defendants' interest in MMC, the alleged criminal enterprise, and thus makes property valued up to that amount subject to forfeiture under the racketeering forfeiture statute, regardless of whether all of this income was related to illegal activity.

In addition, the government alternately contends that under the money laundering forfeiture statute, it is entitled to forfeiture of $3,590,000, representing the amount of the financial transactions identified as overt acts in the money laundering con-spiracy count of the indictment.[7] The defendants argue that these transactions contained only $1,069,843.50 in alleged proceeds of fraud, and that only that amount ought to be subject to forfeiture.[8]

Finally, while the defendants agree that they have paid their defense attorneys $900,000 so far,[9] they contend that unmodified restraint of their assets will impinge on their Sixth Amendment right to counsel, in view of the complexity of the case and the expected length of trial.

### III

As an initial matter, the government argues that the grand jury's findings as expressed in the indictment that the property is subject to forfeiture are conclusive. However, it is settled that the Due Process Clause requires a post-restraint, pretrial hearing in order to allow a defendant an attempt to rebut the government's probable cause for forfeiture, at least where substantially all of the defendant's assets have been seized and his ability to fund his defense is implicated.[10] I find the reasoning of the Fifth Circuit in *United States v. Thier*[11] persuasive, namely that while the grand jury's findings

---

**5.** Following the hearing of November 2, 2001, the government submitted an additional exhibit, designated for identification as 1–A, which is a schedule of these investment accounts with current values. The defendants have agreed that I may consider this exhibit, which will be admitted as late exhibit 1–A. The protective order also restrains certain described real estate and personal property, but the value of that property has not been disclosed to the court.

**6.** *See* Defs.' Ex. 1.

**7.** *See* Defs.' Mot. Modify Protective Order & Mem. Law Supp. 3. The amount specifically identified in the indictment is slightly different, *see* Indictment, count 73, at p. 22–23, but the defendants represent that the government's disclosures show this figure, and the government does not contradict it.

**8.** *See* Defs' Mot. Modify, *supra* note 7. The government's case agent agreed at the hearing that the amount of fraud identified was "a little over $1,000,000." Tr. 46.

**9.** The defendants have been represented by counsel for several years during the investigation stage of the case, since long before the indictment. *See* Tr. 90. The payments to the defense attorneys were thus made before the protective order was entered.

**10.** *See United States v. Farmer,* 274 F.3d 800, 803–04 (4th Cir.2001); *United States v. Harvey,* 814 F.2d 905, 928–29 (4th Cir.1987).

**11.** 801 F.2d 1463 (5th Cir.1986).

"constitute strong showings for injunctive relief ... they are not irrebuttable."[12] I must therefore consider whether the facts developed at the hearing rebut the grand jury's findings of probable cause. That determination requires an analysis of the relevant statutes.

The racketeering statute under which the defendants are charged provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ... [and][i]t shall be unlawful for any person to conspire to violate any of the provisions of [this] subsection.... [13]

In addition to other penalties, it is provided that:

Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States ... (1) any interest the person has acquired or maintained in violation of section 1962; (2) any—(A) interest in; (B) security of; (C) claim against; or (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly,

from racketeering activity ... in violation of section 1962.[14]

The statute allows the government to seek a post-indictment, pretrial restraint of property which would "in the event of conviction, be subject to forfeiture under this section."[15] The purpose of any such restraining order or injunction is to preserve the availability of the property for forfeiture.[16]

The government argues that the investment accounts in question are substitute assets for the gross income received over the relevant years from MMC, and thus are subject to forfeiture as "any ... interest in [the racketeering enterprise]."[17] This is true, according to the government, even for income not produced by the defendants' alleged illegal conduct.

I find the government's position unsupportable. While a racketeering enterprise need not be a separate legal entity from the person engaged in its activities,[18] it clearly is distinct from that person within the meaning of the criminal forfeiture statute. Otherwise, the statute would simply provide that all assets and income of the racketeering enterprise are subject to forfeiture, regardless of their connection with illegal activities. Instead, the statute seeks to separate the guilty defendant from the enterprise by forfeiture of the defendant's interest in the enterprise and also to punish the defendant by forfeiture of his illegal or tainted proceeds from the

12. *Id.* at 1470.

13. 18 U.S.C.A. § 1962(c), (d).

14. *Id.* § 1963(a).

15. *Id.* § 1963(d)(1)(A).

16. *Id.* § 1963(d)(1).

17. *Id.* § 1963(a)(2)(A). A plain reading of the statute would appear to exclude substitute assets from pretrial restraint, but the Fourth Circuit has held otherwise. *Compare In re Assets of Martin,* 1 F.3d 1351, 1359–60 (3d Cir.1993), *with In re Billman,* 915 F.2d 916, 921 (4th Cir.1990).

18. *See* 18 U.S.C.A. § 1961(4) (West 2000) ("enterprise" broadly defined).

enterprise.[19]

If the government's interpretation was correct, and it could forfeit all income received by a defendant from a racketeering enterprise, both tainted and untainted, then the alternative forfeiture provision of § 1963(a)(3) would be meaningless. It would not be necessary under the statute to permit forfeiture of the defendant's *illegal* proceeds if the government could forfeiture *all* proceeds received from the enterprise.

For these reasons, I hold that the government cannot restrain the entire amount of the defendants' investment accounts based on the racketeering forfeiture statute.

■ The government alternatively seeks to retain $3,590,000 worth of the investment accounts based on the money laundering forfeiture provisions. A determination of that claim also involves an analysis of the relevant statutes.

The defendants are charged in the indictment with money laundering conspiracy.[20] The money laundering forfeiture statute provides that:

The court, in imposing sentence on a person convicted of an offense in violation of section ... 1956, 1957 ... of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or

any property traceable to such property.[21]

The indictment charges that the defendants conspired to violate that portion of the money laundering statute that provides as follows:

Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished.... [22]

The defendants argue that because the government does not charge any financial transactions designed by the defendants to disguise the source of the illegal money, only the value of the tainted money can be restrained, rather than the entire amount of both tainted and untainted funds.

The government's case agent testified at the hearing that of the $3,590,000 in financial transactions described in the money laundering conspiracy count of the indictment, only a portion represented the proceeds of illegal activities by the defendants. He agreed that all of the funds involved were deposited in the defendants' regular bank accounts.

■ It is clear that the meaning of "the property involved" in the money laundering offense is to be construed broadly for purposes of forfeiture.[23] While the forfei-

---

**19.** *See United States v. Riley,* 78 F.3d 367, 370–71 (8th Cir.1996) ("RICO's criminal forfeiture is an *in personam* remedy to punish the RICO defendants. It does not permit the government to seize control of an enterprise that defendants used to accomplish their racketeering.") (citation omitted).

**20.** *See* 18 U.S.C.A. § 1956(h).

**21.** 18 U.S.C.A. § 982(a)(1). The statute provides that such forfeiture shall be governed by the provisions of 21 U.S.C.A. § 853 (West 1999 & Supp.2001), a part of the Comprehen-

sive Drug Abuse Prevention and Control Act of 1970. *See* 18 U.S.C.A. § 982(b)(1) (West 2000).

**22.** 18 U.S.C.A. § 1957(a) (West 2000). The statute contains a list of crimes that constitute specified unlawful activities, including mail fraud, as charged here. *See* 18 U.S.C.A. § 1956(c)(7)(A) (West 2000).

**23.** *See* Stefan D. Cassella, *Establishing Probable Cause for Forfeiture in Federal Money Laundering Cases,* 39 N.Y.L. Sch. L.Rev. 163, 167 (1994).

ture statute does not contain any definition, "property involved in" has been interpreted to mean property that "facilitated" the illegal money laundering, or property "that is substantially connected to that activity, in that it furthered, facilitated, or aided in the commission of the activity." [24]

While it is true that the indictment in this case does not expressly allege facilitation, an indictment is normally required only to follow the words of the statute.[25] It remains to be seen if the government is able to show at trial that the deposit by the defendants of tainted funds was facilitated by the use of untainted funds, thus allowing "an air of legitimacy and protection from outside scrutiny" and "making their crimes 'more or less free from obstruction or hindrance.' " [26]  In summary, I find that the defendants have not rebutted the government's showing of probable cause that the untainted funds are subject to forfeiture.  Accordingly, I hold that the government can restrain up to the value of $3,590,000 from the defendants' assets.

I will allow the government to chose the particular assets that it desires to restrain, up to the value set forth above.  The government is directed to advise the court in this regard (and present a proposed order if it desires) within ten days of the date of entry of this opinion, so that a modified protective order may be entered.

It is so **ORDERED.**

---

**24.**  *United States v. Matai,* No. 97–4129, 1999 WL 61913, at *4 (4th Cir. Feb. 10, 1999) (unpublished); *See United States v. All Monies ($477,048.62) in Account No. 90–3617–3, Israel Disc. Bank, N.Y., N.Y.,* 754 F.Supp. 1467, 1473 (D.Haw.1991).

**25.**  *See United States v. Saltzman,* 809 F.2d 1044, 1046 (4th Cir.1987).

**26.**  *United States v. All Monies,* 754 F.Supp. at 1475 (quoting *United States v. Schifferli,* 895 F.2d 987, 991 (4th Cir.1990)).  *Schifferli* was a case under the drug forfeiture statute, which does contain "facilitating" language, *see* 21 U.S.C.A. § 853(a)(2) (West 1999), and courts in money laundering cases have borrowed the construction of that term under § 853.  *See United States v. Matai,* 1999 WL 61913, at *4.